# Johnson *against* Boyer.

A temporary stay of execution by agreement of the plaintiff, in consideration of a confession of judgment by the defendant, will not exonerate the special bail in the action.

ERROR to the common pleas of *Dauphin* county.

This was a *scire facias* upon a recognizance of special bail by Samuel Boyer against John Johnson; in which the following facts were agreed to by the parties.

Samuel Boyer, the plaintiff, sued out a *capias ad respondendum* in the court of common pleas of Dauphin county against a certain John Snevily, being No. 227, returnable to April term 1832, for debt on a promissory note on which bail was required in 600 dollars, on which the sheriff of said county made return of *cepi corpus* bail bond; and on the 31st of March 1832 the plaintiff filed a statement under the act of assembly of the 21st of March 1806. On the 21st of May 1832, John Johnson became bound in recognizance taken before the prothonotary in the sum of 600 dollars, as special bail of the said John Snevily. On the 9th day of June 1832, a paper signed by the said John Snevily as defendant, in the following words, viz. "I do hereby agree to appear and confess judgment to the plaintiff in this suit for the sum of 267 dollars 89 cents, with release of errors and costs of suit, and with stay of execution to the 9th day of August 1832," was filed with said suit, and a judgment entered thereon ac-

[*Johnson v. Boyer.*]

cordingly by the prothonotary. On the 29th of June 1832 a bail piece was issued at the instance of said John Johnson, at which time the said John Snevily was still in the county of Dauphin aforesaid, but the said bail piece was never executed or returned by the said John Johnson. On the 10th of August 1832 Samuel Boyer, the plaintiff, sued out and issued a *capias ad satisfaciendum* on the said judgment against the said John Snevily, being No. 104 of August term 1832, returnable on the 20th, being the third Monday of August, and the first day of the August term ; on which *capias ad satisfaciendum* the sheriff of said county made return *non est inventus.*

This suit is brought by the said Samuel Boyer against the said John Johnson on the aforementioned recognizance by *scire facias*, returnable to November term 1832, No. 157 ; and it is agreed that the record of the said suit, No. 227, April term 1832, be annexed to and made part of this special verdict, containing the recognizance aforesaid, and the *capias ad satisfaciendum* and sheriff's return thereon, No. 104, August term 1832.

It is agreed that the regular terms of the court of common pleas of Dauphin county commence on the third Monday of January, April, August and November of each year, *to continue two weeks ;* and that the said John Snevily prepared his petition for the benefit of the insolvent laws, sworn to in Philadelphia on the 31st of October 1832, and sent the same by mail to Harrisburg, which was filed in the court of common pleas of Dauphin county on the 19th of November 1832, as a voluntary application on the 1st day of November term: whereupon the court ordered personal notice to be given to his creditors by the said John Snevily, and appointed the 17th of December 1832 for his hearing : and it is further agreed that the said Samuel Boyer had no notice of this application, or of the order and proceedings of the court thereon, *prout* the said petition and the record of the several orders and proceedings thereon, which are to be annexed to and made part of this special verdict. On the 7th of December 1832 the said John Snevily returned to the county of Dauphin, after an absence of more than five months, and on the 8th of December 1832 he was arrested at the suit of a certain Abraham Stayman, and imprisoned in the jail of Dauphin county ; and while so confined, on the 22d of December, he, the said John Snevily, filed another petition for the benefit of the insolvent laws in said court, on which said petition he, the said John Snevily, was discharged by the said court, under the insolvent laws, on the 29th of January 1833, *prout* said petition and the record of the several orders of the court and proceedings thereon, which are to be annexed and made part of this special verdict. The said John Snevily was confined in the said jail at the suit of the said Abraham Stayman from the said 8th of December to the said 29th of January 1833.

If the court shall be of opinion that the said Samuel Boyer, the plaintiff, has a right to recover on the case above stated, then judgment to be entered against the said John Johnson, the defendant, for

III.—XX

the sum of 267 dollars 89 cents, with interest from the 9th of June 1832, and costs of suit; but if the court shall be of opinion that the plaintiff is not entitled to recover, then judgment to be entered for the defendant, with costs of suit. The judgment so entered to be subject to a writ of error from the supreme court, at the instance of either party.

The court below (Blythe, president) rendered a judgment for the plaintiff.

*M'Clure*, for plaintiff in error, cited, 1 *Law Lib.* 122, 124, 126 ; Roup *v.* Waldhouen, 12 *Serg. & Rawle* 24.

*M'Cormick*, for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—An exemption from execution for a further time than the defendant would have had if the plaintiff had proceeded regularly to judgment, may perhaps discharge the bail on the principle which regulates the responsibility of sureties in equity ; though even that is said to be a modern refinement, and not to be too much, encouraged. However, no such exemption is pretended here. But the bail may be discharged by circumstances of stipulated indulgence short of a grant of such further time. Their power to arrest the defendant and keep him imprisoned, is derived from the right of the plaintiff to have satisfaction of the body, and ceases with it whether the cessation be induced by the act of the plaintiff or the act of the law. Hence it has been held by the English courts, that the defendant's succession to a peerage, or to a seat in the house of commons, or his transportation, banishment, death, or whatever else relieves or prevents him from making satisfaction with his body before the bail are fixed, exonerates them without a surrender. But it has been determined that a *cognovit* taken on terms of personal exemption for a period no greater than the defendant would otherwise have had, produces no such effect. The solidity of this principle is denied by *Mr Theobald* in his *Treatise on the law of Principal and Surety* 216, note (*c*), on the ground that a suspension of the right of execution makes the defendant a freeman ; and if a freeman against the plaintiff, then a freeman against the bail, substituted, as they are, for the plaintiff, with the same capacity, and no other, to affect the defendant's liberty. The decisions to the point are not authority here, and it is consequently necessary to see whether the objections to them are founded in reason. How far, then, the defendant is made a freeman by a limited stay of execution, whether absolutely and permanently, or but conditionally and temporarily, seems to be the matter most material to an inquiry into the foundation of the rule on principle ; and must depend on the terms of the stipulation, or where these are inexplicit, on the nature of it. For if an agreement to postpone the time of execution be not a virtual and

*[Johnson v. Boyer.]*

permanent relinquishment of the right to control the defendant's liberty, it is not easy to see how it can release the bail, an exact performance of whose recognizance is dispensed with only where a surrender would be nugatory, the principal being entitled to be set at large the same instant. But would such a postponement entitle a defendant, in custody at the time, to be discharged without a condition to that effect on the *cognovit?* If such a condition could be fairly implied, the bail would undoubtedly be exonerated without a surrender. But it is not nugatory where the body remains contingently liable; nor does it follow, on the very principle of the argument, that the bail are further exonerated than the defendant is himself. Why then should they not be bound to produce him, according to the exigence of their recognizance, where the plaintiff's right to demand him has ceased to be dormant and is put into immediate action? They cannot be injured by postponement for a period less than would entitle them to equitable relief, because they may relieve themselves by surrendering the plaintiff and leaving his right to liberation to be settled by the parties to the *cognovit.* They may surrender him on the original arrest, though an execution be not in the hands of the sheriff waiting for him. It is said in effect, that though the immediate power of imprisonment is transferred to the bail, the plaintiff must retain the power of having it put in action by an execution; and that he parts for a time even with these by a stay of execution. But he has no such means before the recovery of judgment, till which time there is intermediately an entire cessation of his power; and the absence of it afterwards, consequently, cannot be the criterion : if it were, a temporary suspension of execution by a statutory provision, such as with us ensues a judgment on special verdict, demurrer, or case stated, in order to give time for a writ of error, would have the effect of working a dissolution of the recognizance, which it never was intended or supposed to have. A writ of error which supersedes execution, undoubtedly discharges the special bail, because the bail in error is substituted for them, and a new security is interposed; but if a writ of error be not taken, or bail in error be not given, the special bail remain liable; and why should a suspension by the act of a party be more extensive in its effect? If a limited stay of execution implied an exemption of the person at the expiration of it, it would certainly make the defendant a freeman; but it is one thing to postpone the time of satisfaction, and another to narrow the means of it. When the stay is out, the plaintiff has the same right to execution of the body that he had before, or that he would have had if there had been no stay at all; and if a suspension of the right to immediate execution be not necessarily a relinquishment of the security originally taken to have the body forthcoming, when execution of it should be legally demanded, it produces no intermission of the plaintiff's power over it in the meantime. During a postponement of execution, the power of the bail, incidental to a continuance of their responsibility, is as much the power of the

[Johnson v. Boyer.]

plaintiff as it was before judgment; nor is it more remotely so in respect to his means of compelling them to use it by an execution against the body.   In the event of the defendant's succession to a seat in parliament, or of his transportation, banishment or dea*t*h, the power both of the plaintiff and the bail is displaced by a superior power, which essentially differs the case from that of a mere suspension of the plaintiff's right to insist on the immediate exercise of a power transferred from him to the bail, and continuing to exist in them with all its original force.   It would be unreasonable to interpret the agreement for a stay so as to subject the plaintiff to the risk of the defendant's evasion, unless the latter could have no benefit of it in another way.   Not only, however, is his property temporarily exempt from seizure, but the custody of his person is committed to the discretionary authority of a friend, whose object in acquiring it is to set him at liberty instead of letting him remain in jail, under the arbitrary power of the plaintiff.   He may, doubtless, be deprived of the expected benefit by the capricious surrender of his friend; but to be subject to the power of a keeper of his own choice was the whole consideration of his *cognovit*, and if he meant to stipulate for the permanent exemption of his person, he ought to have had it so expressed.   At the worst, he has the benefit of a temporary exemption of his property, which is a sufficient consideration.   Having obtained every thing that he stipulated for, it does not follow that he would be discharged if surrendered; and it therefore seems that the opposite doctrine is without foundation even in technical reason.   But, however the question might be thought to stand on theory or foreign authority, it is sufficient for present purposes that no counsel in Pennsylvania ever suspected a temporary stay of execution to be an exoneration of special bail, and that the practice has been settled, from the first, in conformity with the principle now indicated.   It would seem, therefore, that the plaintiff was entitled to judgment.

Judgment affirmed.